UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20cv25340

SAMANTHA MCDERMOTT,

    Plaintiff,

v.

ATLANTIC UNION, INC.,
and JENNIFER CABRERA, *individually*,

    Defendants.

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

## COMPLAINT

Plaintiff, SAMANTHA MCDERMOTT (hereinafter referred to as "Plaintiff" or "Ms. McDermott"), through undersigned counsel, Derek Smith Law Group, PLLC, brings this action against Defendants, Atlantic Union, Inc. (hereinafter referred to as "Atlantic Union" and collectively as "Defendants") and Jennifer Cabrera in her official and individual capacity (hereinafter referred to as "Cabrera" and collectively as "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201 et seq., and alleges as follows:

### NATURE OF ACTION

1. At the request, and with the approval, of Jennifer Cabrera, in her official and individual capacity as CEO, Ms. McDermott performed substantial and valuable services as an administrative assistant for Cabrera and Atlantic Union, and Defendants have failed and refused to pay for these services in full. Through this action for the collection on unpaid debts, Breach of Contract, and in the alternative for Quantum Meruit and Unjust Enrichment, Ms. McDermott seeks to recover monies due for the services she has provided to the Defendant.

## THE PARTIES, JURISDICTION AND VENUE

2. The Court has original subject matter jurisdiction pursuant to the Fair Labor Standards Act.

3. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions under the Fair Labor Standards Act.

4. This Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367 over all State causes of action.

5. At all times material hereto, Ms. McDermott is an individual who resides in Broward County who is subject to the personal jurisdiction of this Court.

6. At all times material hereto, Jennifer Cabrera, was the Vice President of Atlantic Union, Inc., which is located at 78 SW 7th Street, Miami, FL 33230 and therefore within and subject to the personal jurisdiction of this Court.

7. At all material times Atlantic Union, Inc. is a for-profit corporation located at 78 SW 7th Street, Miami, FL 33130, and therefore within and subject to the personal jurisdiction of this court.

8. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendants were located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendant within Miami-Dade County which is in Miami, Florida.

## GENERAL ALLEGATIONS

9. On or about June 18, 2019, Defendant hired Ms. McDermott as an Administrative Assistant to Cabrera.

10. Notably, at all material times Cabrera was the only officer and employee of Atlantic Union, Inc.'s Miami division.

11. At all material times, Cabrera controlled all aspects of Ms. McDermott's employment, including but not limited to setting her work hours, duties, and compensation.

12. Defendants agreed to pay Ms. McDermott a salary of $15 per/hour (subsequently raised to $16 per/hour) plus an additional $100 for each loan file she worked on and funded. A copy of the letter setting out the terms of Ms. McDermott's employment and compensation (hereinafter referred to as "Offer Letter"), and signed by both Ms. McDermott and Cabrera, is attached hereto and incorporated herein, as **Exhibit "A."**

13. Cabrera required Ms. McDermott to carry a company cell phone for the purposes of conducting company business. In addition, Cabrera provided Ms. McDermott with office space and office equipment for the purposes of conducting company business.

14. Cabrera also required Ms. McDermott to set up an email account and Amazon account for the purposes of conducting company business should office supplies ever needed to be ordered.

15. Cabrera determined and controlled all duties that she required Ms. McDermott to perform, which included, but were not limited to, overseeing her work email account provided by Ms. Cabrera, identifying leads from Cabrera's work emails and issuing lead response emails to procure new loans, entering new loan approval requests into an online portal, beginning the "Loan Process" by sending confirmations (adding mortgage amounts, terms, etc.) and getting signatures from potential mortgagees, obtaining all due diligence documents for each loan and property, uploading due-diligence documents such as Signed Loan Approvals, Appraisals, Titles, Environmental Impact Reports, etc. according to each Loan File on Atlantic Union's online loan portal, coordinating with Appraisal companies and arranging appraisal appointments for properties, and coordinating with Title Companies and notaries in different states. Ms. McDermott also organized and tracked all open files that were awaiting funding and she was accountable for managing all

related deadlines.

16. Defedants assigned the above tasks for the sole purpose of furthering their business endeavors. Ms. McDermott's work specifically focused on securing loan funding for Defendants' clients.

17. As a result of the work Defendants assigned to Ms. McDermott, Cabrera received a generous commission for each funded loan per month through FMC Lending, Inc. According to the terms of their agreement, Cabrera was to pay Ms. McDermott $100 for each file that Ms. McDermott had worked on that was funded.

18. Additionally, Cabrera arranged for Ms. McDermott to be trained in how to create Mortgage Notes in order to speed up the funding process, which would enable Defendants to further develop their business. Although this was originally managed by an indivudal in California, Cabrera added this function to Ms. McDermott's responsibilities because of how efficiently and effectively Ms. McDermott performed her duties. In exchange for this additional job responsibility, Cabrera promised to compensate Ms. McDermott $100 for each mortgage note she prepared. Defendant's additional commision structure offered to Ms. McDermott was in furtherance but in no way reliant upon completion of each funded file.

19. Despite the above assurances, Cabrera only compensated Ms. McDermott for the mortgage notes Ms. McDermott had personally prepared. At no time did Cabrera compensate Ms. McDermott for the files that Ms. McDermott had spent extensive time working on (due diligence, coordinating titles, revisions, associated correspondences, etc.) that were funded, as was assured in her employment agreement. As such, Defendants deprived Ms. McDermott of her duly earned commission for at least fourteen files that Ms. McDermott had worked on that were funded.

20. Cabrera also required that Ms. McDermott perform duties that were entirely unrelated to

her job, including highly personal tasks. By way of example, Cabrera, who was in the process of in vitro fertilization, would instruct Ms. McDermott to email prescription forms to Cabrera's obstetrician-gynecologist and scheduling her medical appointments. This made Ms. McDermott extremely uncomfortable, as it was both inappropriate and beyond the scope of her employment.

21. Throughout the course of her employment, Defendant consistently required Ms. McDermott to perform duties that were outside the scope of the job description as advertised and her agreement with Defendents.

22. Cabrera required Ms. McDermott to follow a regular schedule from 10:00 AM to 6:00 PM Monday through Friday. However, Cabrera would often require Ms. McDermott to work well past 6:00 PM in order to complete her duties.

23. Despite the fact that Defendants required Ms. McDermott to work, on average, more than 8 hours a week beyond the 40 hours a week she had agreed to work, Defendants did not compensate her for the overtime hours she worked at the appropriate rate of pay, and in fact berated Ms. McDermott for attempting to seek the compensation she was owed for these hours.

24. Moreover, Defendants did not pay Ms. McDermott for the hours she worked during her final week of employment, in or around the week of September 2, 2019.

25. On or about September 16, 2019 Ms. McDermott resigned from her employment relationship with Defendants and requested that the hourly compensation for her final week and the loan commissions owed to her be remitted.

26. Defendants refused to pay Ms. McDermott for her final week of service and for the loan commissions owed to her. Moreover, Defendant went so far as to send aggressive and threatening emails and text messages, and even a Cease and Desist Letter, to intimidate Ms. McDermott so that she would stop asking for payment.

27. As a result, Ms. McDermott has been forced to initiate this action against Defendants and will incur attorney's fees and costs in connection with this action. Ms. McDermott is entitled to recover said reasonable Attorneys fees and costs and interest from Defendants pursuant to §57.105, Fla. Stat. (2008).

## COUNT I
## OVERTIME DUE UNDER THE FLSA 29 U.S.C. § 207

28. Ms. McDermott sues Defendants, adopts and re-alleges the allegations contained in paragraphs above as if fully and expressly set forth herein, and further alleges:

29. Plaintiff brings this Complaint for violations of the FLSA to recover unpaid wages in violation of the overtime requirements, liquidated damages, interest, and reasonable attorneys' fees.

30. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA. Further, Defendants knew that Plaintiff was routinely working overtime hours.

31. As stated herein, Ms. McDermott was entitled to overtime compensation at the default rate of no less than time and a half her regular rate of pay for hours she worked beyond forty in any given workweek.

32. Cabrera controlled all aspects of Ms. McDermott's employment, including but not limited to setting her work hours, duties, and compensation. Defendants agreed to pay Ms. McDermott a salary of $15 per/hour (subsequently raised to $16 per/hour). Cabrera required Ms. McDermott to follow a regular schedule from 10:00 AM to 6:00 PM Monday through Friday. However, Cabrera would often require Ms. McDermott to work well past 6:00 PM in order to complete her duties. Cabrera required Ms. McDermott to carry a company cell phone for the purposes of conducting company business. In addition, Cabrera provided Ms. McDermott with office space and office equipment for the purposes of conducting company business. Cabrera determined and controlled

all duties that she required Ms. McDermott to perform, which were assigned for the sole purpose of furthering Defendants' business endeavors. Defendants further trained Ms. McDermott in how to create Mortgage Notes for the sole purpose of further developing their business. Cabrera also required that Ms. McDermott perform duties that were entirely unrelated to her job, including highly personal tasks that were both inappropriate and beyond the scope of her employment.

33. Ms. McDermott worked more than forty hours per work on a consistent basis throughout her employment with Defendants.

34. Defendants did not pay Ms. McDermott any premium for overtime hours, treating her as exempt under the FLSA.

35. Defendants' failure to pay Plaintiff overtime compensation at a rate not less than time and a half her regular rate of pay, or any premium, for all hours worked over forty in a given work week is a violation of the FLSA, in particular, 29 U.S.C. § 207.

36. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

37. Due to Defendants' FLSA violations, Plaintiff has suffered damages and is entitled to recover from Defendants the unpaid overtime compensation, and an additional amount equal as liquidated damages, prejudgment interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT II
## BREACH OF ORAL CONTRACT

38. Ms. McDermott sues Defendants, adopts and re-alleges the allegations contained in paragraphs above as if fully and expressly set forth herein, and further alleges:

39. The Plaintiff and the Defendants entered into an oral contract for compensation of Plaintiff

for her employment with the Defendants as described above.

40. In connection with their oral contract, the bargained for consideration was Plaintiff's employment in exchange for $15 (subsequently raised to $16) per hour, and Plaintiff's working on files in exchange for $100.00 for each file that was funded.

41. On or about June 18, 2019, Ms. McDermott undertook to provide services as an Administrative Assistant to Cabrera in her official capacity.

42. Ms. McDermott's services included, but were not limited to, overseeing her work email account, identifying leads from Cabrera's work emails and issuing lead response emails to procure new loans, entering new loan approval requests into an online portal, beginning the "Loan Process" by sending confirmations (adding mortgage amounts, terms, etc.) and getting signatures from potential mortgagees, obtaining all due diligence documents for each loan and property, uploading due-diligence documents such as Signed Loan Approvals, Appraisals, Titles, Environmental Impact Reports, etc. according to each Loan File on Atlantic Union's online loan portal, coordinating with Appraisal companies and arranging appraisal appointments for properties, and coordinating with Title Companies and notaries in different states. Ms. McDermott also organized and tracked all open files that were awaiting funding and she was accountable for managing all related deadlines. Additionally, Ms. McDermott learned how to create Mortgage Notes in order to speed up the funding process, which would enable Defendants to further develop their business. Moreover, Ms. McDermott performed services for Cabrera, often inappropriate and personal in nature, that were outside the scope of the job description as advertised and her agreement with Defendents.

43. Ms. McDermott worked on at least 14 files that were successfully funded, for which Defendants had promised to pay her $100 each. Furthermore, Ms. McDermott worked a total of

38 hours during her final week of employment, for which Defendants had promised to pay her $16 per/hour.

44. Plaintiff has not received the payment of $1,400 for the 14 files that she worked on and were successfully funded.

45. Plaintiff has not received the any compensation for her final week of employment during the week of September 2, 2019.

46. Plaintiff performed the necessary work under the parties' oral contract to vest the wages and commissions to which she is entitled.

47. Defendants breached the parties' oral contract, however, by refusing to pay Plaintiff for her services rendered, and failing to pay Plaintiff for all wages and commissions due and owing.

48. Plaintiff has been damaged due to Defendants' willful failure to pay Plaintiff the appropriate agreed upon compensation, and by breaching the oral contract between the parties.

49. Pursuant to § 448.08, Florida Statutes, Plaintiff is entitled to costs of this action and her reasonable attorney's fees.

**WHEREFORE,** Ms. McDermott demands judgment against Defendants for compensatory damages, pre-judgment interest, pursuant to the Agreement, as well as costs and Attorney's fees and for such other and further relief as this Court deems just and proper.

### COUNT III
### QUANTUM MERUIT

50. Ms. McDermott sues Defendants, adopts and re-alleges the allegations contained in paragraphs above as if fully and expressly set forth herein, and further alleges:

51. This is an action in the alternative for Quantum Meruit against Defendants.

52. As an alternative pleading to the allegations in Counts I and II, Plaintiff worked for

Defendants but was not properly compensated for her services rendered.

53. On or about June 18, 2019, Ms. McDermott undertook to provide services as an Administrative Assistant to Cabrera in her official capacity.

54. At all time material hereto Ms. McDermott provided, and Defendants received and accepted, Ms. McDermott's valuable services. Moreover, at all time material to, Cabrera demanded and accepted Ms. McDermott's services for her personal needs. At all time material hereto Defendants and Ms. McDermott understood and intended compensation to be paid to Ms. McDermott for her services.

55. At all times material hereto, Ms. McDermott provided substantial services with the understanding and expectation that she would be paid by Defendants for her services.

56. Ms. McDermott consistently worked more 40 hours each week (approximately an additional 8 hours per week on average) in performance of her duties and in furtherance of Defendants' business endeavors.

57. Ms. McDermott's services included, but were not limited to, overseeing her work email account, identifying leads from Cabrera's work emails and issuing lead response emails to procure new loans, entering new loan approval requests into an online portal, beginning the "Loan Process" by sending confirmations (adding mortgage amounts, terms, etc.) and getting signatures from potential mortgagees, obtaining all due diligence documents for each loan and property, uploading due-diligence documents such as Signed Loan Approvals, Appraisals, Titles, Environmental Impact Reports, etc. according to each Loan File on Atlantic Union's online loan portal, coordinating with Appraisal companies and arranging appraisal appointments for properties, and coordinating with Title Companies and notaries in different states. Ms. McDermott also organized and tracked all open files that were awaiting funding and she was accountable for managing all

related deadlines. Additionally, Ms. McDermott learned how to create Mortgage Notes in order to speed up the funding process, which would enable Defendants to further develop their business. Moreover, Ms. McDermott performed services for Cabrera, often inappropriate and personal in nature, that were outside the scope of the job description as advertised and her agreement with Defendents.

58. Defendants have refused and continue to refuse to pay for these services that were readily received and accepted.

59. Defendants have received the benefit of the services rendered by Ms. McDermott and then failed and refused to pay in full for said services. Ms. McDermott is entitled to payment for the reasonable value of the services that were received and accepted by Defendants.

60. Defendants accepted these services and never objected to the same.

61. Defendants were aware that Plaintiff expected to be compensated for her services as agreed upon by the parties.

62. Defendants were unjustly enriched by the work Plaintiff performed without receiving proper compensation for same.

63. Plaintiff has been damaged due to Defendants' willful failure to fully pay Plaintiff for all wages and commissions earned during her employment with Defendants.

64. Pursuant to § 448.08, Florida Statutes, Plaintiff is entitled to costs of this action and her reasonable attorney's fees.

**WHEREFORE**, Ms. McDermott, demands judgment against Defendants for compensatory damages, pre-judgment interest and costs, and for such other and further relief as this Court deems just and proper.

## COUNT IV
## UNJUST ENRICHMENT

65. Ms. McDermott sues Defendants, adopts and re-alleges the allegations contained in paragraphs above as if fully and expressly set forth herein, and further alleges:

66. As an alternative pleading to the allegations in Counts I, II, and III, Plaintiff worked for Defendants but was not properly compensated for her services rendered.

67. As Defendants requested, Ms. McDermott conferred a benefit on Defendants by providing Administrative Assistant and personal assistant services to the Atlantic Union, Inc. and Jennifer Cabrera in her individual and official capacity. Additionally, Defendant Cabrera received a generous commission for each funded loan that Ms. McDermott had worked on.

68. Ms. McDermott consistently worked more 40 hours each week (approximately an additional 8 hours per week on average) in performance of her duties and in furtherance of Defendants' business endeavors.

69. Ms. McDermott's services included, but were not limited to, overseeing her work email account, identifying leads from Cabrera's work emails and issuing lead response emails to procure new loans, entering new loan approval requests into an online portal, beginning the "Loan Process" by sending confirmations (adding mortgage amounts, terms, etc.) and getting signatures from potential mortgagees, obtaining all due diligence documents for each loan and property, uploading due-diligence documents such as Signed Loan Approvals, Appraisals, Titles, Environmental Impact Reports, etc. according to each Loan File on Atlantic Union's online loan portal, coordinating with Appraisal companies and arranging appraisal appointments for properties, and coordinating with Title Companies and notaries in different states. Ms. McDermott also organized and tracked all open files that were awaiting funding and she was accountable for managing all related deadlines. Additionally, Ms. McDermott learned how to create Mortgage Notes in order to

speed up the funding process, which would enable Defendants to further develop their business. Moreover, Ms. McDermott performed services for Cabrera, often inappropriate and personal in nature, that were outside the scope of the job description as advertised and her agreement with Defendents.

70. Defendants voluntarily accepted and retained the benefit conferred by such services, which allowed for the orderly and efficient administration of business operations and Cabrera's personal interests.

71. Defendants were substantially enriched because of Ms. McDermott's services, as they received a sizable monetary compensation for each file that Ms. McDermott worked on that was funded. Moreover, because Ms. McDermott learned how to prepare Mortgage Notes and worked extremely diligently to do so, Defendants were able to secure their commission much sooner than they otherwise would have.

72. Defendants have refused to pay Ms. McDermott for services conferred on the Defendants. Thus Defendants have been unjustly enriched by retaining the value of said services, which allowed Defendants to increase the efficiency and profitability of their business and allowed for Cabrera to have her personal errands taken care of without incurring any extra expense.

73. It would be inequitable for Defendants to retain the benefit and value of such services without paying the value thereof to Ms. McDermott.

**WHEREFORE**, Ms. McDermott demands judgment against Defendants for compensatory damages, pre-judgment interest and costs, and for such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Dated: Miami, Florida
December 31, 2020

DEREK SMITH LAW GROUP, PLLC

/s/ Meir Weiss
Meir David Weiss, Esq.
Fla Bar No.: 1022288
Meir@dereksmithlaw.com
701 Brickell Avenue
Suite 1310
Miami, FL 33131
Tel: 305-946-1884
Fax: 305-503-6741
*Attorneys for Plaintiff*